**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| SELECTIVE SIGNALS, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>FORTINET, INC.,<br><br>    Defendant. | Case No. 6:17-cv-00064-RWS-KNM<br><br>JURY TRIAL DEMANDED |

**DEFENDANT FORTINET INC.'S MOTION TO CHANGE VENUE TO THE
NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF FACTS ....................................................................................................2

    A. Fortinet ......................................................................................................................2

    B. Selective Signals .......................................................................................................4

    C. Third-Parties .............................................................................................................5

III. THE RELEVANT STANDARDS .........................................................................................6

IV. ARGUMENT .........................................................................................................................7

    A. This Action Could Have Been Brought in the Northern District of California ...................................................................................................................7

    B. The Private and Public Factors Weigh Heavily in Favor of Transfer to the Northern District of California..................................................................................7

        1. Relative Ease of Access to Sources of Proof ...............................................7

        2. Cost of Attendance for Willing Witnesses..................................................10

        3. Availability of Compulsory Process to Secure the Attendance of Witnesses Weighs in Favor of Transfer.......................................................11

        4. Local Interest in Adjudicating Local Disputes Weighs in Favor of Transfer .......................................................................................................11

        5. Judicial Economy Cannot Outweigh the Other Convenience Factors........................................................................................................13

        6. Remaining Public Interest Factors ..............................................................14

V. CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

**Page**

## Cases

*ACQIS LLC v. EMC Corp.*,
  67 F. Supp. 3d 769 (E.D. Tex. 2014) ........................................................................................ 8

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ..................................................................................... 11

*In re Apple, Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) .......................................................................................... 13

*Blue Spike, LLC v. Texas Instruments, Inc.*,
  Nos. 6:12-cv-499 & -564, 2014 WL 1374045 (E.D. Tex. Mar. 13, 2014) ......................... 12, 13

*Chrimar Sys. v. Juniper Networks, Inc.*,
  Nos. 6:15-cv-618 & -630, 2016 WL 126936 (E.D. Tex. Jan. 11, 2016) ................. 9, 10, 11, 13

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ............................................................................................ 8, 10

*GeoTag, Inc. v. Starbucks Corp.*,
  No. 2:10-cv-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ............................................... 13

*In re Google Inc.*,
  *Appeal*, No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) .............................. 1, 10, 13

*Lone Star Document Mgmt., LLC v. Catalyst Repository Sys., Inc.*,
  No. 6:12-cv-164, 2013 WL 5496816 (E.D. Tex. Mar. 15, 2013) ............................................ 12

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
  425 F. Supp. 2d 325 (E.D.N.Y. 2006) ..................................................................................... 10

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*,
  No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ....................... 2, 9, 13, 14

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009) ................................................................................................. 7

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
  No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010) ................................. 8, 10, 11

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014) ................................................................................................. 6

*TracBeam, LLC v. Apple, Inc.*,
  No. 6:14-cv-680, 2015 WL 5786449 (E.D. Tex. 2015) .......................................................... 14

*U.S. Ethernet Innovations, LLC v. Samsung Electronics Co., Ltd.*,
    No. 6:12-CV-398 MHS-JDL, 2013 WL 1363613 (E.D. Tex. Apr. 2, 2013) ........................... 14

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ................................................................................... 6, 7, 8, 10

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    Nos. 2:10-cv-364, -365, -577, & -578, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ............. 12

### Statutory Authorities

28 U.S.C. § 1400(b) ............................................................................................................. 7

28 U.S.C. § 1404(a) ........................................................................................... 1, 6, 7, 8, 9, 15

Defendant Fortinet, Inc. ("Fortinet") respectfully moves to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I. INTRODUCTION

The Northern District of California is Fortinet's home. Fortinet's headquarters are in that District—in Sunnyvale, California. Virtually all of Fortinet's United States employees devoted to engineering, finance, operations, manufacturing, and marketing work in Sunnyvale, California or nearby in Union City, California. Indeed, the accused products in this case (certain FortiGate products) were designed and developed in the Northern District of California, and the accused FortiGate products destined for United States customers are (after being manufactured in Asia or Union City, California) tested and shipped from the Northern District of California. In addition, the vast majority of Fortinet's documents, including documents relating to the development and commercialization of the accused products and the source code that allegedly infringes the asserted patents, are stored on servers and computers in the Northern District of California.

In contrast, the only connection this case has to the Eastern District of Texas is that Plaintiff Selective Signals, LLC ("Selective Signals") is allegedly (if questionably) based here and has filed other suits against other defendants here in the Eastern District of Texas.[1] But that alone does not merit keeping the case in this District. As the Federal Circuit explained in *In re Google Inc.*, Appeal No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017), it "cannot be correct" that "the mere co-pendency of related suits in a particular district would automatically tip the balance in non-movant's favor regardless of the existence of co-pending

---

[1] Specifically, Selective Signals has accused Palo Alto Networks, Inc. ("PAN") (Case No. 6:17-000065-RWS-KNM) ("*PAN Case*"), Rohde & Schwarz USA, Inc. ("R&S") (Case No. 6:17-cv-00066-RWS-KNM), and WatchGuard Technologies, Inc. ("WatchGuard") (Case No. 6:17-cv-000670RWS-KNM) of infringing the same patent.

transfer motions and their underlying merits." This is especially true here, where plaintiff's sole presence in this district is a single employee who routinely starts new businesses in order to assert patents against operating companies and an "office" that is shared with 23 other business (11 of whom are run by the same employee). Under these circumstances, the Court should find that judicial economy, alone, cannot outweigh the inconvenience to Fortinet of litigating this case in the Eastern District of Texas and, therefore, transfer the case the Northern District of California.

## II. STATEMENT OF FACTS

### A. Fortinet

Fortinet is a Delaware corporation with strong ties to the Northern District of California. Nelson Decl. ¶ 5. Fortinet's principal place of business and headquarters are in Sunnyvale, California, which is in the Northern District of California. *Id*. Virtually all of Fortinet's United States employees devoted to engineering, finance, operations, manufacturing, and marketing work in the Northern District of California. *Id.* ¶ 6; *see also Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *6 (E.D. Tex. Jan. 23, 2012) ("[N]early all of . . . Fortinet's . . . management and technical witnesses reside in the Northern District of California, where the compan[y] [is] headquartered."). Virtually all of Fortinet's senior management is also in Sunnyvale. *Id.* ¶ 8. Indeed, decisions regarding design, marketing, sales, and pricing occur predominantly in Sunnyvale. *Id*.

Numerous Fortinet employees with knowledge of the accused FortiGate products—including employees who designed, developed, commercialized, and marketed the accused products—work at Fortinet's Sunnyvale headquarters. Such employees include:

- Jim Bray, who has knowledge regarding Fortinet's financial records, costs, profits, etc., related to Fortinet's products;

2

- John Maddison, Vice President, Products and Solution, who has knowledge regarding the lifecycles of Fortinet's products;

- James Allen, Director of Product Marketing, who has knowledge regarding the marketing of Fortinet's products; and

- Michael Xie, Chief Technology Officer, who is the ultimate engineering and product lead for all FortiGate products.

*Id.* ¶ 10.

Indeed, the numbers speak for themselves: around 95% of Fortinet's United States employees who research, design, and develop products work in Sunnyvale, California and almost 99% of them work in California; similarly, almost 90% of Fortinet's United States employees devoted to finance, operations, manufacturing, and marketing work in the Northern District of California. *Id*. ¶ 7.

Fortinet's hardware—running the accused FortiGate products—is generally manufactured by Fortinet's OEMs in China and Taiwan; however, even the specifications according to which the hardware is manufactured are designed by Fortinet's engineers in Sunnyvale, California. *Id*. ¶ 11. In addition, at least one "FortiGate"-branded product is actually manufactured right in the Northern District of California, in Union City. *Id.* Finally, quality control testing for the accused FortiGate products destined for United States customers takes place in Union City, California in the Northern District of California, and any of the accused FortiGate products shipped in the United States are shipped from there. *Id.* ¶ 12.

In addition, the vast majority of documents that relate to the design, development, commercialization, and marketing of the accused FortiGate products, as well as the source code that provides the features Selective Signals accuses of infringement, are also located in or near Sunnyvale, California within the Northern District of California. *Id*. ¶ 13. Additional documents are located in Vancouver, British Columbia, Canada, and thus closer to Northern District of

3

California than to the Eastern District of Texas. *Id*. In fact, a number of Fortinet's databases, including its financial records and source code repositories are inaccessible from the Eastern District of Texas in the ordinary course of business. *Id.*

In contrast, **none** of the small pool of Fortinet employees in Texas is involved in the design and development of the accused FortiGate products, nor are there any relevant, non-redundant documents there. *Id*. ¶ 14. In fact, the importance of Fortinet's California headquarters is unrivaled. Fortinet's other locations, and with the potential exception of Fortinet's Vancouver office, do not have documents or employee knowledge relevant to this case that are not also found in Fortinet's headquarters in California, but there are vast numbers of documents and employees with unique knowledge relevant to this case in Sunnyvale, California that are not found in any other Fortinet office. *Id*. ¶ 15.

Finally, the inconvenience imposed upon Fortinet if it were forced to litigate this case in this District is underscored by the fact that Fortinet has never filed a lawsuit in the Eastern District of Texas. *See id.* ¶ 16.

### B. Selective Signals

Selective Signals was formed in Texas on January 1, 2016, and thus has only had a principal place of business in Texas for one and a half years. *See* Exhibit A. The Complaint alleges that Selective Signals' address is 211 E. Tyler St., Suite 600-A, Longview, TX 75601.5 (Complaint at ¶ 2). Selective Signals says that it "is in the business of patent licensing." *See PAN Case*, Dkt. 20-1 ¶ 4 (declaration from Selective Signals' sole manager and employee). But this assertion appears to be based entirely on Selective Signals settlement discussions with defendants in the consolidated cases, since Selective Signals does not allege that it commenced licensing negotiations with any of the consolidated defendants prior to filing suit. *See PAN Case*, Dkt. 22 at 2 fn. 1 (Selective Signals' sur-reply to PAN's motion to transfer).

4

Moreover, Selective Signals' "office" appears to be in an office-sharing suite that is shared with as many as **twenty-three (23) other, active businesses** who list Suite 600-A as their address. Exhibit B (search results showing 23 businesses that, according to the Texas Secretary of State's records, have the same suite with Selective Signals). To make matters worse, Selective Signals' sole manager or employee, Nicolas Labbit, is the manager of **eleven (11) of those businesses**. *See id*. Mr. Labbit has used every on of those eleven other businesses to sue practicing entities for patent infringement, filing approximately **two-hundred forty (240) lawsuits** in the process. Exhibit C (Docket Navigator search results showing lawsuits filed by the 11 other businesses managed by Mr. Labbit). Accordingly, Selective Signals, like Mr. Labbit other ventures, is a non-practicing entity formed entirely for the purpose of suing operating companies on the same.

### C. Third-Parties

Selective Signals asserts one patent against Fortinet: U.S. Patent No. 8,111,629 ("the '629 patent") (collectively, "the asserted patents"). According to the face of the asserted patent, the named inventor of the '629 patent is located in Israel. The "present invention" of the '629 patent purports to identify a particular application type ("media sessions") based on "the flow of packets." *See* '629 patent at 1:16-21. The '629 patent then uses this information to, for example, "allocat[e] appropriate resources or not allocat[e] at all, as required." *See id* at 3:23-29.

Other known third parties with relevant information include prior art authors and manufacturers. Such important third party sources of proof are likely to be found in the Northern District of California. For example, by at least January 23, 2003 (and thus before the '629 patent's priority date), Cisco System, Inc. ("Cisco") (which is headquartered in the Northern District of California) sold routers that included a Network-Based Application Recognition ("NBAR") feature. Exhibit D at 1. NBAR is "a classification engine that recognizes a wide

variety of applications" and capable of "applying Quality of Service (QoS) to the classified traffic." *Id*. at 3. Cisco's NBAR feature, therefore, likely anticipates or at a minimum renders obvious the '639 patent. Information regarding the inner workings of the NBAR feature, including technical documents explaining in inner workings of this "classification engine" or its source code, do not appear to be publicly available. Accordingly, Defendants will need to subpoena Cisco for this information, and Cisco remains an important third party source of proof until then.

In contrast, no known third-party witnesses reside in the Eastern District of Texas.

### III. THE RELEVANT STANDARDS

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The Fifth Circuit considers "private" and "public" factors in determining whether transfer under Section 1404(a) is warranted. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive." *Id.* (citation omitted). The public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law." *Id.*

"[A] moving party, in order to support its claims for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Id.* at 314 (internal quotation marks omitted). The moving

party need not, however, show "that the transferee forum is *far* more convenient." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014). Indeed, the plaintiff's choice of forum is not a factor in this analysis. *In re Nintendo Co., Ltd*., 589 F.3d 1194, 1200 (Fed. Cir. 2009).

"In a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *Id.* at 1198.

## IV. ARGUMENT

This case should be transferred to the Northern District of California because (i) it could have been brought in the Northern District of California; and (ii) all of the private and public factors weigh in favor of transfer or are neutral.

### A. This Action Could Have Been Brought in the Northern District of California

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen*, 545 F.3d at 312. Here, venue is proper in the Northern District of California because Fortinet sells the accused FortiGate products (*i.e.,* alleged "acts of infringement") within that District and maintains its headquarters (*i.e.,* "a regular and established place of business") there. *See* Nelson Decl. ¶¶ 5, 17; *see also* 28 U.S.C. § 1400(b). According, this action might have been brought in the Northern District of California and may properly be transferred there.

### B. The Private and Public Factors Weigh Heavily in Favor of Transfer to the Northern District of California

#### 1. Relative Ease of Access to Sources of Proof

The "relative ease of access to sources of proof" remains a "meaningful factor" in the § 1404(a) analysis, notwithstanding modern technology and electronic storage of documents. *Volkswagen*, 545 F.3d at 316. This factor "turn[s] upon which party . . . will most probably have

7

the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-cv-390, 2010 WL 3855520, at*2 (E.D. Tex. Sept. 30, 2010) (citation omitted). "In patent infringement cases, . . . the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks omitted).

Here, the bulk of evidence relevant to this case is physically located in the Northern District of California. The vast majority of documents relating to the design, development, commercialization, and marketing of the accused FortiGate products are located in Sunnyvale, California within that District. *See supra* at 3-4. So is Fortinet's source code, which provides the features Selective Signals alleges infringe the asserted patents. *See id.* Indeed, important sources of Fortinet's proof, including at least source code and financial records, cannot even be accessed from the Eastern District of Texas in the ordinary course of business. *See id.* Further, numerous Fortinet employees with knowledge regarding the accused FortiGate products— including the employees who designed, developed, commercialized, and marketed these products—work at Fortinet's Sunnyvale headquarters. *See supra* at 3. Third party sources of proof—such Cisco's evidence regarding the operation of the prior art NBAR feature—are also located in the Northern District of California. *See supra* at 6; *see also ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 775 (E.D. Tex. 2014) ("Presumably, the bulk of discoverable material relating to a corporate party is located at the corporate headquarters.").

.The sources of proof in the Eastern District of Texas are, by contrast, insignificant. While Fortinet rents office space in Plano, Texas, the individuals working in that office were not involved in the design and development of the accused FortiGate products, and Fortinet, in fact,

8

does not have any relevant, non-redundant sources of proof in this District.  *See supra* at 3-4.  The fact that Selective Signals purports to maintain an office in this district—which is shared with almost two dozen other entities—"should not be considered in a § 1404(a) analysis" because that office is "nothing more than a construct for litigation." *See Network Protection Science*, 2012 WL 194382, at *4.[2]  Even if Selective Signal's office is considered, however, the ease of accessing any evidence there cannot outweigh the ease of accessing Fortinet's substantial evidence in the Northern District of California.  *See supra* at 4-5; *see also Chrimar Sys. v. Juniper Networks, Inc.*, Nos. 6:15-cv-618 & -630, 2016 WL 126936, at *3 (E.D. Tex. Jan. 11, 2016) (finding that "this factor weighs in favor of transfer," even though the plaintiff maintains an office in the Eastern District of Texas, because "the Court must also acknowledge that 'the bulk of relevant evidence usually comes from the accused infringer'").

Other known third party sources of proof—including the named inventor of the '629 patent in Israel and Fortinet's OEMs in China and Taiwan—are located a great distance from both the Northern District of California and the Eastern District of Texas, and the ease of accessing these sources of proof is neutral.  *See supra* at 3-4, 6.

Because the bulk of evidence relevant to this case will come from Fortinet's headquarters in the Northern District of California, as well the third party sources of proof in the same District, the "relative ease of access to sources of proof" factor weighs heavily in favor of transfer.  *See also Google*, 2017 WL 977038, at *3 (finding that where "the vast majority of [defendant's] employees—in particular those responsible for projects relating to the accused product—work

---

[2] The contacts of Selective Signals' sole employee, Mr. Labbit, to this District do not alter this outcome, as Mr. Labbit is not a party to this case.  Accordingly, unless Selective Signals amends its complaint to somehow add Mr. Labbit as a plaintiff, and thereby render him personally liable for any counterclaim or attorneys fees Fortinet may pursue, the fact that he is from Texas is irrelevant.

and reside in the Northern District of California," "the evidence overwhelmingly supports a conclusion that this factor weighs strongly in [defendant's] favor").

### 2. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech*, 566 F.3d at 1342 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). Requiring witnesses to travel to a remote district to attend trial imposes "not only . . . monetary costs, but also the personal costs associated with being away from work, family, and community." *See Volkswagen*, 545 F.3d at 317. "When a particular witness will be required to travel 'a significant distance no matter where they testify,' then that witness is discounted for purposes of the [convenience] analysis. *On Semiconductor Corp.*, 2010 WL 3855520, at *5.

Again, the vast majority of likely witnesses with relevant knowledge reside in the Northern District of California. Numerous Fortinet witnesses—including the specific individuals listed *supra* at 3-4—who designed, developed, commercialized, and marketed the accused FortiGate products, and thus have relevant and material knowledge regarding this product, are in the Northern District of California. *See id*.

In contrast, there is only one known, potential witness with non-redundant knowledge in the Eastern District of Texas: Selective Signals' sole manager, Mr. Labbit. *See supra* at 5. But the convenience to a single Selective Signals employee of keeping this case in this District is greatly outweighed by the inconvenience to the many material Fortinet employees and named inventors who will have to travel from the Northern District of California to the Eastern District of Texas. *See Chrimar*, 2016 WL 126936, at *4 (finding that this factor weighs in favor of transfer when a defendant identify more willing witnesses in the transferee district than a plaintiff identifies in the transferor district).

10

The remaining witnesses—including the named inventor of the '629 patent in Israel and Fortinet's OEMs in China and Taiwan—would have to travel a significant distance whether this Case is transferred to the Northern District of California or remains in this District, and their convenience should, therefore, be accorded little, if any, weight. *See supra* at 3, 5-6; *see also On Semiconductor Corp.*, 2010 WL 3855520, at *5.

Since Fortinet's and third party witnesses in and near the Northern District of California greatly outnumber Selective Signals' lone witness in the Eastern District of Texas, the "convenience of attendance for willing witnesses" factor weighs heavily in favor of transfer, too.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses Weighs in Favor of Transfer.

"Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses [than the transferor district]." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013).

Cisco is a third party located in the Northern District of California and has in its possession important evidence regarding the prior art NABR feature *See supra* at 6. The subpoena power of the Northern District of California will, therefore, be necessary to compel Cisco to sit for depositions, produce documents, and attend trial. In contrast, there are no known third-party witnesses outside the absolute subpoena power of the Northern District of California, but within the absolute subpoena power of this Court. Accordingly, the "availability of compulsory process" factor favors transfer.

### 4. Local Interest in Adjudicating Local Disputes Weighs in Favor of Transfer

Local interest determination involves a comparison of the localized interest of the two forums. *Lone Star Document Mgmt., LLC v. Catalyst Repository Sys., Inc.*, No. 6:12-cv-164, 2013 WL 5496816, at *6 (E.D. Tex. Mar. 15, 2013) (finding that this factor "favors transfer"

11

where the transferee district has "a greater local interest in this case").  Here, the Northern District of California has a much stronger and more particularized interest in deciding this Case.

The Northern District of California is Fortinet's home.  Fortinet maintains its headquarters in Sunnyvale, California, employs a large workforce there, designed and developed the accused FortiGate products there, and even manufactured at least one "FortiGate"-branded product there.  *See supra* at 3-4.  The Northern District of California, therefore, has a strong localized interest in deciding this Case.  *See Wireless Recognition Techs. LLC v. A9.com, Inc.*, Nos. 2:10-cv-364, -365, -577, & -578, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (finding local interest factor weighs in favor of transfer when defendants are headquartered, develop the accused products, and employ a large number of people in the transferee venue); *Network Protection Sciences*, 2012 WL 194382, at *7 (concluding that "the residents of the Northern District of California have a particularized interest in the subject matter of this lawsuit" because, *inter alia*, Fortinet is "headquartered there," "developed the allegedly infringing products in the Northern District of California," and employs a large number of people "residing in California").

On the other hand, the Eastern District of Texas has relatively little localized interest in deciding this case.  Because the accused FortiGate products are available for purchase throughout the United States (Nelson Decl. ¶ 17), the "citizens of [the Eastern District of Texas] do not have a particularized interest in deciding the dispute simply based on product sales within the venue."  *See Blue Spike, LLC v. Texas Instruments, Inc.*, Nos. 6:12-cv-499 & -564, 2014 WL 1374045, at *5 (E.D. Tex. Mar. 13, 2014).  And none of Fortinet's employees that work in the Eastern District of Texas have been involved in the design and development of the accused FortiGate products.  Nelson Decl. ¶ 14.

The only possible localized connection this case has with the Eastern District of Texas is the location of Selective Signals' purported office in Longview, Texas. Even if this connection were afforded any weight at all, Fortinet's specific identification of "individuals [in the Northern District of California] whose work and reputation are being called into question by allegations of infringement" outweighs any local interest stemming from Selective Signals' office in the Eastern District of Texas. *See Chrimar*, 2016 WL 126936, at *6; *see also Google*, 2017 WL 977038, at *3 n.3 ("Given the relative strength of [defendant's] ties to the Northern District of California juxtaposed with [plaintiff's] ties to the Eastern District of Texas, it would appear that this factor weighs in [defendant's] favor as well. ").

### 5. Judicial Economy Cannot Outweigh the Other Convenience Factors

"[J]udicial economy is just one relevant consideration in determining how administration of the court system would best be served in deciding a transfer motion." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). "The proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation." *Id.* (internal quotation marks omitted).

Here, because Fortinet "has shown [that] the Northern District of California is a clearly more convenient forum, the considerations of judicial economy . . . do not override that showing to warrant a denial of transfer." *See Chrimar*, 2016 WL 126936, at *6. This is especially true because PAN has also moved to change venue to the Northern District of California, *see PAN Case*, Dkt. 17, and the Court must, therefore, weigh the convenience of not one, but two defendants headquartered in the North District of California against judicial economy. *Cf Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *7 (transferring Fortinet and others to the Northern District of California). To hold otherwise would allow a plaintiff to "manipulate venue by serially [filing] cases within a single

13

district." *See GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013); *see also Blue Spike, LLC v. Texas Instruments, Inc.*, Nos. 6:12-cv-499 & -564, 2014 WL 1374045, at *5 (E.D. Tex. Mar. 13, 2014) ("The one factor that slightly weighs against transfer does so only because Plaintiff serially filed dozens of cases in this district and, therefore, is of limited importance."). This Court has previously granted motions to transfer even if judicial economy "strongly weighs against transfer" based on the other factors, and should do so here again. *See Mass Engineered Design, Inc. v. SpaceCo Business Solutions, Inc.*, No. 6:14-cv-411, 2016 WL 6824415, at *4-5 (E.D. Tex. Mar. 28, 2016).

Accordingly, judicial economy cannot alone outweigh the burden on Fortinet of litigating this case in the Eastern District of Texas. Instead, the case should be transferred to the Northern District of California.

### 6. Remaining Public Interest Factors

Both the Eastern District of Texas and the Northern District of California have about equal court congestion, both are familiar with the law that will govern this case, and this case raises no issues of conflicts of law or the application of foreign law. *See TracBeam, LLC v. Apple, Inc.*, No. 6:14-cv-680, 2015 WL 5786449, at *7 (E.D. Tex. 2015). Even if the Court decides to give some weight to statistics showing time to trial in the Eastern District of Texas being slightly faster (by a few months) than in the Northern District of California, this factor is "the most speculative, and cannot alone outweigh other factors." *See U.S. Ethernet Innovations, LLC v. Samsung Electronics Co., Ltd.*, No. 6:12-CV-398 MHS-JDL, 2013 WL 1363613, at *5 (E.D. Tex. Apr. 2, 2013) (finding this factor neutral "due to its speculative nature").

Accordingly, the remaining public interest favors are neutral.

## V.  CONCLUSION

For the foregoing reasons, Fortinet respectfully requests transfer of this action to the

Northern District of California, pursuant to 28 U.S.C. § 1404(a).

DATED:  August 29, 2017

Respectfully submitted,

 */s/ John M. Neukom*

John M. Neukom
California State Bar No. 275887
(Admitted in E.D. Tex.)
johnneukom@quinnemanuel.com
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257


*Attorneys for Defendant Fortinet, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 29th day of August, 2017.

*/s/ Ognjen Zivojnovic*
Ognjen Zivojnovic

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Defendant has conferred with Plaintiff's counsel, Todd Brandt, about the subject matter of this motion on August 29, 2017 and that the parties were unable to resolve the dispute. Thus, the matter is ripe for the Court's determination.

*/s/ Ognjen Zivojnovic*
Ognjen Zivojnovic
